**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **ALANA HOSICK**, <br><br> Plaintiff, <br><br> v. <br><br> **CATALYST IT SERVICES, INC.**, <br><br> Defendant. | Case No. 3:15-cv-01100-SI <br><br> **OPINION AND ORDER** |

Craig A. Crispin and Shelley D. Russell, CRISPIN EMPLOYMENT LAWYERS, 1834 SW 58th, Suite 200, Portland, OR 97221. Of Attorneys for Plaintiff.

Amy L. Angel and Tyler J. Volm, BARRAN LIEBMAN, LLP, 601 S.W. Second Avenue, Suite 2300, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff ("Hosick") brings a claim for unpaid minimum wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206, and a claim for unpaid wages, compensation, and related penalties and damages under Oregon Revised Statutes Chapters 652 and 653. Hosick alleges that Defendant Catalyst IT Services, Inc. ("Catalyst") hired her in March 2012 and required her to complete a training and internship program prior to assigning her client projects. According to Hosick, Catalyst unlawfully failed to pay her for the approximately 12-week

PAGE 1 – OPINION AND ORDER

training period. Based on the terms of a Training Agreement that Hosick signed, Catalyst moves to dismiss Hosick's claims for improper venue under Federal Rule of Civil Procedure l2(b)(3) or, in the alternative, to transfer this action to the United States District Court for the District of Maryland under 28 U.S.C. § 1404. Dkt. 5. For the reasons that follow, the Court denies the motion to dismiss and grants the motion to transfer venue.

## STANDARDS

In a Rule 12(b)(3) motion, "[a] defendant over whom personal jurisdiction exists but for whom venue is improper may move for dismissal or transfer under 28 U.S.C. § 1406(a)." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1175, 1181 (9th Cir. 2004). 28 U.S.C. § 1406(a) provides, "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." The U.S. Supreme Court has recently ruled that "a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of § 1406(a) or Rule 12(b)(3)" and that § 1404(a) provides the proper mechanism for the enforcement of such a clause. *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, ––– U.S. ––––, 134 S.Ct. 568, 579 (2013).

On a motion to transfer venue under 28 U.S.C. §1404(a), a court may transfer any civil action "[f]or the convenience of the parties and witnesses, in the interests of justice." 28 U.S.C. § 1404(a). The forum to which transfer of venue is sought must be a district court where the case "might have been brought." *Id*. Under § 1404(a), the district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Steward Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks and citation omitted); *see Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

PAGE 2 – OPINION AND ORDER

The ordinary analysis of a motion to transfer venue under § 1404(a) changes when the parties have formed a contract that includes a valid forum-selection clause. *Atl. Marine*, 134 S. Ct. at 581. A court must give a forum-selection clause "controlling weight in all but the most exceptional cases." *Id. at* 579 (internal citation and quotation marks omitted). Plaintiff bears the burden of showing the exceptional circumstances that make transfer inappropriate. *Id.* at 581. In evaluating whether the plaintiff has established that transfer is inappropriate, a court should refrain from "unnecessarily disrupt[ing] the parties' settled expectations" when the parties have agreed "in advance to litigate disputes in a particular forum." *Id.* at 583.

## BACKGROUND

Hosick earned her Bachelor of Science degree in computer science from the University of Mississippi in 2003. After graduation, she taught English, math, and science in Taiwan and Korea. She also spent three years teaching computer science in Kuwait. In March 2012, she began attending Catalyst's training program at its offices in Beaverton, Oregon. The program was designed to teach information technology skills.

Catalyst is incorporated in Delaware and has its principle place of business in Baltimore, Maryland. The company has two offices, one in Maryland and one in Oregon. Oregon has authorized Catalyst to transact business in the state.

When Hosick began Catalyst's training program, Hosick signed a Training Agreement. The Training Agreement was one-page long and consisted of three sections. In Section One, the Training Agreement specified that Hosick was "not an employee of Catalyst" but that "[i]f, in Catalyst's judgment, [Hosick] successfully complete[d] the Program, Catalyst will hire [Hosick] in a full-time job with health benefits that will pay a wage of at least $15.00 per hour." Section Two stated that the training services were valued at $25,000, which Hosick would need to repay

Catalyst if, after the date the company hired her, Hosick did not continue working for Catalyst for two years. Section Three provided:

> This Agreement shall be construed in accordance with the laws of the State of Maryland without reference to choice of law provisions. Each party agrees that if it brings suit in a dispute arising from this Agreement it will do so in the state courts of Maryland or the U.S. District Court for the District of Maryland.

Above the signature line, the Agreement stated: "I have had an opportunity to review this Agreement, understand it and sign it willingly."

According to Andrew Coomes, a trainee who attended the program with Hosick, a Catalyst employee briefly explained the terms of the Training Agreement on the first day of the program. Mr. Coomes spoke with a Catalyst employee about questions Mr. Coomes had relating to the Training Agreement. Mr. Coomes believes that he signed and returned the Training Agreement during the second or third week of the program. Peter Lee, General Counsel and Vice President of Catalyst, also asserts that training program participants are not required immediately to execute the Training Agreement and may review the agreement through the first two weeks of the program. Trainees may also leave the program before or after executing the Training Agreement.

Hosick completed the 12-week training with Catalyst. The training involved attending sessions from 9:00 a.m. to 5:00 p.m. every week-day. Hosick did not receive a degree, certificate of completion, or higher education credit upon completion of the program, but Catalyst promoted her to "employee" and began paying her $15.00 per hour. Hosick now alleges that Catalyst violated federal and Oregon law by failing to pay her a minimum wage while she attended the training program. She asserts that she is entitled to unpaid wages of approximately $2,900 and additional penalties, damages, and attorney's fees.

## DISCUSSION

### A. Motion to Dismiss for Improper Venue

According to Catalyst, the Court is an improper venue for Hosick's claims based on the forum-selection clause in the Training Agreement. Venue is proper "so long as the requirements of § 1391(b) are met, irrespective of any forum-selection clause." *Atl. Marine*, 134 S. Ct. at 578. 28 U.S.C § 1391(b) provides, "A civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." A defendant entity resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2). After a trial court finds that the venue meets the requirements of § 1391(b), the court must "assess[] the effect of the forum selection clause *only* under Section 1404(a)." *Fine v. Cambridge Int'l Sys., Inc.*, 584 F. App'x 695, 696 (9th Cir. 2014) (emphasis added).

Catalyst does not dispute that it is subject to the Court's personal jurisdiction. Catalyst opened an office in Oregon, trained employees in Oregon, and obtained authorization to transact business in Oregon. The District of Oregon is thus a proper venue under § 1391(b). Accordingly, § 1404(a)—rather than Rule 12(b)(3) or § 1406(a)—is the proper mechanism for evaluating the Training Agreement's forum-selection clause. Catalyst's motion to dismiss is denied.

### B. Motion to Transfer Venue

Catalyst also moves, in the alternative, for an order transferring venue to the District of Maryland under § 1404(a). Hosick responds that the Court should not enforce the forum-selection clause of the Training Agreement because (1) the Training Agreement as a whole is procedurally and substantively unconscionable; and (2) transfer to the District of Maryland would be inconvenient or unfair based on private-interest and public-interest factors.

### 1. Whether the Training Agreement is Unconscionable

Hosick argues that the Training Agreement is procedurally and substantively unconscionable under both Oregon and Maryland law. The Court notes that if Hosick sought to escape the forum-selection clause on the grounds of fraud or overreaching, she would be required to show that the inclusion of the clause itself in the contract was improper; it would be insufficient to attack the agreement as a whole. *See Richards v. Lloyd's of London*, 135 F.3d 1289, 1297 (9th Cir. 1998) (noting "that simply alleging that one was duped into signing the contract is not enough. . . . For a party to escape a forum selection clause on the grounds of fraud, it must show that 'the inclusion of that clause in the contract was the product of fraud or coercion.'") (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974)); *LaCross v. Knight Transp., Inc.*, 95 F. Supp. 3d 1199, 1204 (C.D. Cal. 2015) (rejecting plaintiff's contentions that a forum-selection clause was the product of fraud and overreaching because the arguments went "to the contract as a whole").

Additionally, when a federal court considers whether a forum-selection clause is itself unconscionable, the court must apply federal law. *See Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988) ("[B]ecause enforcement of a forum clause necessarily entails interpretation of the clause before it can be enforced, federal law also applies to interpretation of forum selection clauses."). The Court is not aware, however, of a Ninth Circuit case addressing whether a federal court may consider unconscionability of a contract as a whole under state law when the contract contains a forum-selection clause. In the absence of controlling precedent, the Court entertains Hosick's argument that the Training Agreement as a whole is unconscionable under Oregon and Maryland law.[1]

---

[1] Because Hosick argues that Oregon and Maryland law yield the same result, the Court declines to decide which state's law applies to the unconscionability analysis.

### a. Procedural Unconscionability under Oregon and Maryland Law

Hosick argues that the Training Agreement is procedurally unconscionable under either Oregon or Maryland law. Oregon courts assess unconscionability at the time of contract formation. *Bagley v. Mt. Bachelor, Inc.*, 356 Or. 543, 555 (2014). Procedural unconscionability focuses on "oppression and surprise. . . . Oppression exists when there is inequality in bargaining power between the parties, resulting in no real opportunity to negotiate the terms of the contract and the absence of meaningful choice." *Id.* Surprise exists where one party hides or obscures contract terms from the other party. "[T]he hallmarks of surprise" include ambiguous wording and fine print. *Id.*

Maryland courts similarly assess unconscionability at the time of contract formation. *State Highway Admin. v. Greiner Eng'g Scis., Inc.*, 83 Md. App. 621, 641 (1990). An agreement may be unconscionable based on "one party's lack of meaningful choice." *Falls v. 1CI, Inc.*, 208 Md. App. 643, 664 (2012). Procedural unconscionability incudes "deception or a refusal to bargain over contract terms." *Id.* (quoting 8 Richard A. Lord, *Williston on Contracts* § 18:10 (4th ed. 1998)).

According to Hosick, the Training Agreement is procedurally unconscionable because she had no bargaining power or meaningful choice whether to sign the agreement. She asserts that Catalyst presented her with a contract on a take-it-or-leave-it basis and failed to explain the contract terms to her. Hosick further asserts that she had no opportunity to negotiate contract terms or consult with counsel and that she would have forfeited the job if she had not signed the contract.

Hosick's assertions fall short of establishing procedural unconscionability in light of the circumstance of the contract's formation. Catalyst presented Hosick, a well-educated professional, with a one-page contract. The contract contained three short, simply-worded

PAGE 7 – OPINION AND ORDER

sections. The contract also included a statement that the signee had an opportunity to review the Training Agreement, understood it, and signed it willingly. Catalyst presents evidence that another trainee, Mr. Coomes, had an opportunity to ask questions about the Training Agreement and take the agreement home to review and discuss with whomever Mr. Coomes wanted. Hosick does not present evidence that Catalyst singled her out for different treatment and prevented her from consulting with counsel concerning the Training Agreement's terms. Moreover, Hosick does not present evidence that she had an obligation to go forward with the training program after she received a copy of the Training Agreement on the first day. Under these circumstances, the Training Agreement was not procedurally unconscionable under Oregon or Maryland law.

### b. Substantive Unconscionability under Oregon and Maryland Law

In Oregon, substantive unconscionability focuses not on the circumstances of contract formation but on "whether the substantive terms contravene the public interest or public policy." *Bagley*, 356 Or. at 555. Such terms "unfairly favor the party with greater bargaining power." *Livingston v. Metro. Pediatrics, LLC*, 234 Or. App. 137, 151 (2010). Similarly, in Maryland, "[s]ubstantive unconscionability involves those one-sided terms of a contract from which a party seeks relief (for instance, 'I have the right to cut off one of your child's fingers for each day you are in default')." *Falls*, 208 Md. App. at 664-65 (quoting *Carlson v. General Motors Corp.*, 883 F.2d 287, 296 n.12 (4th Cir.1989)). A substantively unconscionable contract includes "terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Walther v. Sovereign Bank*, 386 Md. 412, 427 (2005) (internal quotation marks omitted).

Hosick argues that the Training Agreement is substantively unconscionable for three reasons: (1) the substantive terms contravene Oregon and Maryland's wage payment laws; (2) the choice-of-law clause operates to prevent the enforcement of any state wage laws against Catalyst; and (3) the forum-selection clause renders litigation unaffordable for Hosick.

Catalyst replies that Hosick was not an employee during the training program and thus failure to pay her wages does not contravene any public policy.

For the purposes of this motion, the Court need not decide whether Hosick was an "employee" under Oregon or Maryland law. The Court simply analyzes whether the language of the Training Agreement's terms unfairly favored Catalyst in violation of Oregon's or Maryland's public policy. The Training Agreement states that Hosick was not an "employee" during the training. The Training Agreement did not offer Hosick an hourly wage for her time spent in training, although the Training Agreement purported to provide Hosick with training services valued at $25,000 in return for her time. According to Catalyst, if Hosick was not an employee, neither Oregon nor Maryland law required Catalyst to pay Hosick a minimum wage. *See* Md. Code Lab. & Empl. § 3-413; Or. Rev. Stat. § 653.025. The agreement's terms do not, on their face, contravene the public policy of Oregon or Maryland.

Hosick also argues that Maryland wage laws apply only to work performed in Maryland. According to Hosick, requiring Hosick's claims to be filed in Maryland under Maryland law thus operates to deprive Hosick of any of her wage claims. This result would conflict, argues Hosick, with Oregon's fundamental policy of protecting Oregon workers. *See Konecranes, Inc. v. Scott Sinclair*, 340 F. Supp. 2d 1126, 1130 (D. Or. 2004). Although the Training Agreement purports to require the application of Maryland law "without reference to choice of law provisions," Maryland recognizes that "a choice of law provision may be set aside where . . . application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." *Three M Enterprises, Inc. v. Tex. D.A.R. Enterprises, Inc.*, 368 F. Supp. 2d 450, 457 (D. Md. 2005) (citation and emphasis omitted). Maryland courts have exercised this discretion to

set choice-of-law provisions aside. *See, e.g.*, *id.* at 458-59 (holding that a Texas choice-of-law provision in a franchise agreement was contrary to Maryland public policy); *Nat'l Glass, Inc. v. J.C. Penney Properties, Inc.*, 336 Md. 606, 615, (1994) (invalidating a contractual provision requiring application of Pennsylvania law where Pennsylvania law would violate a fundamental policy of Maryland). The District of Maryland is free to decide whether application of the choice-of-law clause conflicts with Oregon's fundamental policy. The choice-of-law clause thus does not render the Training Agreement substantively unconscionable.

Finally, Hosick argues that it would be unreasonably costly for her to hire counsel in Maryland, spend the necessary time traveling to Maryland, and otherwise litigate her case in Maryland. This argument goes to the interpretation and application of the forum-selection clause rather than the substantive unconscionability of the Training Agreement as a whole, and thus federal law applies. *Manetti–Farrow*, 858 F.2d at 513. As discussed below, where the parties have agreed to a forum-selection clause, the parties "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine*, 134 S. Ct. at 582. When a party has an opportunity to read a clearly identified and intelligible forum-selection clause before accepting a contract, the party has notice of the clause. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 586 (1991). The third and last paragraph of the Training Agreement contains the forum-selection clause in a readable and clearly-identifiable format. Hosick had the chance to review the clause and, after having had that chance, signed the agreement. Hosick had notice of the clause, agreed to the clause, and waived her right now to challenge the clause on the basis of inconvenience.

## 2. Whether Public Interest Factors Render the Forum-Selection Clause Unenforceable

The Ninth Circuit has held that in federal court, federal law controls the question whether a forum-selection clause is enforceable. *Manetti–Farrow*, 858 F.2d at 513. In *Atlantic Marine*, the U.S. Supreme Court clarified the factors that a district court may consider when evaluating the enforceability of a valid forum-selection clause. 134 S. Ct. at 582-83. In the presence of a valid forum-selection clause, "the plaintiff's choice of forum merits no weight." *Id.* at 582. Additionally, the court "should not consider arguments about the parties' private interests. . . . A court accordingly must deem the private interest factors [including inconvenience to the parties] to weigh entirely in favor of the preselected forum." *Id.* The district court may only consider arguments concerning public-interest factors, which "will rarely defeat a transfer motion." *Id.* The Court thus considers only the public-interest factors presented by Hosick.

Public-interest factors "include administrative difficulties flowing from court congestion; imposition of jury duty on the people of a community unrelated to the litigation; the local interest in resolving the controversy at home; the interest in having a diversity case tried in a forum familiar with the law that governs the action; and the avoidance of unnecessary conflicts of law problems." *Gemini Capital Grp., Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1094 (9th Cir. 1998). Hosick concedes that administrative difficulties do not weigh against transferring venue. She argues, however, that the remaining factors weigh in favor of keeping her claims in Oregon. In order to defeat Catalyst's motion to transfer to the parties' contracted-for venue, these factors must establish that "extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Atl. Marine*, 134 S.Ct. at 575. According to the U.S. Supreme Court, "In all but the most unusual cases . . . , 'the interest of justice' is served by holding parties to their bargain." *Id.* at 583.

### a. Imposition of Jury Duty on the People of a Community Unrelated to the Litigation

Hosick argues that Oregon jurors have a much greater interest than Maryland jurors in the litigation of claims involving Oregon employers. Catalyst also maintains a Maryland office and has its principle place of business in Maryland. Maryland jurors, like Oregon jurors, thus have an interest in determining whether Catalyst's Training Agreement violates federal and state wage laws. This factor does not determinatively weigh in favor of either denying or granting Catalyst's motion to transfer venue.

### b. Local Interest in Resolving the Controversy at Home

Hosick next argues that Oregon has a far greater interest at stake than Maryland because (1) the parties entered the agreement in Oregon; (2) the parties negotiated the agreement in Oregon; (3) Hosick performed work and received training pursuant to the agreement in Oregon; (4) Hosick resides in Oregon; and (5) Catalyst has its West Coast operation in Oregon. Hosick also contends that all or nearly all of the witnesses to the agreement are located in Oregon. She concedes that higher-level corporate managers may be located outside of Oregon.

The U.S. Supreme Court has held that this factor weighs in favor of maintaining claims in the location of the relevant incident and the residence of potential plaintiffs. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260 (1981). Here, as Hosick has emphasized, the relevant work and training occurred in Oregon. Hosick also resides in Oregon. Accordingly, the Court weighs this factor in favor of denying Catalyst's motion to transfer venue.

### c. Familiarity with Governing Law and Conflict of Law Issues

Hosick argues that the Court should not be swayed by the District of Maryland's potentially greater familiarity with Maryland law or interest in enforcing the Maryland choice-of-law clause. Hosick also argues that if Oregon law applies, this Court would have more

experience in enforcing Oregon wage laws than a Maryland court. This Court's familiarity with Oregon wage laws, argues Hosick, weighs in favor of maintaining the action in Oregon.[2]

Parties routinely call on federal courts to apply the law of other jurisdictions, and courts do not consider the task to be overly burdensome. *See Atl. Marine*, 134 S. Ct. at 584 ("[F]ederal judges routinely apply the law of a State other than the State in which they sit."); *Tschudy v. J.C. Penney Corp.*, 2012 WL 1466514, at *2 (S.D. Cal. Apr. 27, 2012) (noting "that federal judges frequently examine the laws of other states without great moment or angst"); *In re Disaster at Riyadh Airport, Saudi Arabia, on Aug. 19, 1980*, 540 F. Supp. 1141, 1153 (D.D.C. 1982) ("Federal courts are experienced in applying foreign law and should not be reluctant to do so."). Neither Hosick nor Catalyst argues that the relevant substantive law of Oregon and Maryland is so arcane that local courts would be at a great advantage when applying their own state law. The Court thus finds that these factors do not weigh in favor of or against denying Catalyst's motion to transfer venue.

To summarize, the Court finds that the local interest in resolving the controversy at home weighs in favor of maintaining the action in Oregon; the other factors are neutral. Given that only one factor weighs against granting the motion to transfer venue, Hosick has not met her "burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Atl. Marine*, 134 S. Ct. at 583.

## CONCLUSION

Catalyst's Motion to Dismiss (Dkt. 5) is DENIED. Catalyst's Motion to Transfer Venue pursuant to 28 U.S.C. §1404(a) (Dkt 5) is GRANTED. The Clerk of the Court is directed to

---

[2] The Court notes that a Maryland court would not be required to apply the choice-of-law rules of Oregon, the original venue. The U.S. Supreme Court "reject[ed] the rule that the law of the court in which the plaintiff inappropriately filed suit should follow the case to the forum contractually selected by the parties." *Atl. Marine*, 134 S. Ct. at 583.

transfer this action to the United States District Court for the District of Maryland and to send a copy of this Opinion and Order to that court.

**IT IS SO ORDERED**.

DATED this 5th day of November, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge